Donald Jesse **LAIR**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–74–286.

Court of Criminal Appeals of Oklahoma.

July 24, 1974.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., for appellee.

## OPINION

BLISS, Presiding Judge:

The appellant, Donald Jesse Lair, hereinafter referred to as defendant, was charged, tried before a jury, and convicted in the District Court of Oklahoma County, Oklahoma, Case No. CRF–73–1663, for the crime of Rape in the First Degree. Punishment was assessed at a term of thirty (30) years imprisonment in the state penitentiary, and from said judgment and sentence the defendant has perfected his timely appeal.

The evidence presented at trial is as follows: Betty Jean Harvey testified that on June 5, 1973, she was employed at the Moore Hospital in Moore, Oklahoma. She checked out about 11:30 p. m., got in her car and started home. About a half mile from the hospital her car stopped and the gas gauge showed empty although that morning the tank had been half full. She started walking back to the hospital and shortly a Volkswagen van approached and a man inquired if she was having car trouble, offering to help her. She declined and the man pulled her into the van, commenced choking her with his forearm around her throat, drove onto a dirt road, forced her into the back of the van, taped her hands and ankles together, and taped her eyes. He returned to her car and she heard him pouring gas in the tank and moving it to the front of the hospital. He then drove for a considerable time, stopped and carried her out of the van and put her in a chair. She heard him throwing some bedsprings down. He removed the tape from her, removed her clothes, removed a tampax she was wearing and raped her. He then used her cigarette lighter to look for something and she was able to see the inside of the place, a small shed, and described same. He then took her back to within a half mile of the hospital and pushed her out. She recognized the man as being one she had been introduced to by a patient in the hospital, one Lorene West. She remembered only his first name, "Don". She later located the shed where the rape occurred, determined that defendant owned it and identified him in court.

Dr. Edwin G. Horne testified that he examined Mrs. Harvey around 6:00 a. m. on June 6. He observed adhesive about her wrists such as tape might have made. A pelvic examination revealed live and dead sperm cells.

Ernest Leon Harvey testified that he left for the hospital when his wife did not arrive home as expected. As he waited at the hospital, he saw a Volkswagen bus ap-

proach slowly and reverse direction. Harvey pursued and came upon his wife "wobbling down the side of the road". At the parking space which his wife customarily used at the hospital he saw a large quantity of gasoline on the ground and the gas filter cap on their car had been forcibly removed.

Officer Clingman, of the Moore Police Department, testified that at the hospital he removed some tape from Mrs. Harvey's ankle. At the place where she said she had parked her car he found the appearance of a spill of several gallons of liquid, "a very strong odor of gasoline." The filler spout of her gas tank had been damaged.

Officer Shobert, of the Oklahoma City Police Department, testified that he interviewed Mrs. Harvey on June 8th and went to defendant's home to arrest him but he was not there. The State then rested.

For the defendant, Tom Quinn testified that he went to defendant's house on September 7, 1973, and took pictures of the shed. He described the interior and surroundings.

Ruby Morris testified that defendant and Lorene West came to visit her in the evening of June 5, 1973, and left together before dark. She fixed the date from the circumstance that he was to paint signs for a garage sale she was having that weekend.

L. L. Morris testified that he was Ruby Morris' husband, and recalled that defendant was at their home on June 5 with Lorene West and they left together about dusk.

Lorene West testified that she was with defendant the evening of June 5, 1973, and they visited Mr. and Mrs. Morris. After leaving, she and defendant went to her house sometime after 10:00 p. m., where she fixed supper. They watched television and about 12:30 or 1:00 a. m., he then went to a house next door and spent the night, leaving his car keys at her house. She had been a patient at the hospital in May and Mrs. Harvey was her nurse. She did not recall formally introducing defendant to Mrs. Harvey, but "every time he came in she would come in and talk."

In rebuttal, Officer Goforth of the Oklahoma City Police Department crime lab, testified that he took some pictures of the interior of the shack on June 8, 1973. In State's Exhibit 4, a picture that he took, he pointed out an object that he identified as a tampax and a piece of adhesive tape.

■ The defendant's first proposition in error urges essentially that the State failed to introduce sufficient evidence to support a verdict of guilty. With this contention we cannot agree. A complete reading of the record reflects that the State introduced sufficient evidence to prove a prima facie case of rape in the first degree. As this Court has held on many occasions, where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, this Court will not interfere with the verdict as it is the exclusive province of the jury to weigh the evidence and determine the facts. See Williams v. State, Okl.Cr., 373 P.2d 91.

■ The defendant's last contention urges that the punishment assessed by the jury was excessive and, therefore, should be modified by the Court. Again, we cannot agree. The Court of Criminal Appeals does not have the power to modify a sentence unless we can conscientiously say that under all facts and circumstances the sentence is so excessive as to shock the conscience of the Court. In the instant case we do not so find.

BRETT and BUSSEY, JJ., concur.